UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TONDA JOHNSON, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>HOLLAND AMERICA LINE,<br><br>Defendant. | CASE NO. C11-0435JLR<br><br>ORDER ON MOTION FOR SUMMARY JUDGMENT |

This matter comes before the court on Defendant Holland America Line's ("HAL") motion for summary judgment (Dkt. # 6). Plaintiffs Tonda Johnson, Cris Johnson, James Johnson, and Daniel Johnson (collectively, "the Johnsons"), who are proceeding pro se, oppose HAL's motion. (Dkt. # 11.) Having reviewed the submissions of the parties and the relevant law, and no party having requested oral argument, the court GRANTS in part and DENIES in part HAL's motion for summary judgment.

ORDER- 1

## I. BACKGROUND

On December 18, 2010, Tonda and Cris Johnson and their sons James and Daniel[1] departed from San Diego on the HAL cruise ship M/S OOSTERDAM ("the ship"). Early in the morning of December 22, 2010, James and Daniel were involved in an altercation with another passenger, David Illner. The parties' accounts of this incident differ. According to Gary Tonkin, a HAL security officer who investigated the incident, Mr. Illner, James, and Daniel were drinking together in the Aft Lido Pool area of the ship. (Tonkin Decl. (Dkt. # 9) ¶ 1.) An assistant steward saw James and Daniel push Mr. Illner in the chest, and he and a second assistant steward saw Daniel sitting on Mr. Illner and hitting him with his elbow. (*Id.* ¶¶ 2-4 & Exs. A & B.) The ship's medical officer examined Mr. Illner and observed bruises and scratch marks consistent with defensive injuries. (*Id.* ¶¶ 5-6 & Ex. C.) Captain Jeroen Baijens ordered a search of Mr. Illner's room for weapons, but no weapons were found. (*Id.* ¶¶ 7-8 & Ex. D.) Mr. Illner provided a brief statement in which he recounted that "things got out of hand" when he asked James and Daniel not to "hit on" two younger women, and that he was pushed to the ground and kicked in the head and body. (*Id.* ¶¶ 9-10 & Ex. E.) According to Mr. Tonkin, James and Daniel were asked to provide statements, but neither did so; instead, they went ashore with their parents on an excursion in Mazatlan, Mexico. (*Id.* ¶ 9.) Captain Johannes Baijens reviewed Mr. Tonkin's incident report (*id.* Ex. F), the statements of the witnesses, and the medical officer's report, and discussed the matter

---

[1] For simplicity of reference, the court refers to the members of the Johnson family by their first names.

with the director of HAL's Fleet Security. (Baijens Decl. (Dkt. # 8) ¶ 1.) Based on his review of the evidence, Captain Baijens concluded that James and Daniel's "actions constituted excessive force for self defense" and ordered that James and Daniel be removed from the ship in Mazatlan. (*Id.* ¶ 2.)

The Johnsons dispute Mr. Tonkin's and Captain Baijens's accounts. First, the Johnsons contend that Mr. Illner initiated the fight, rather than James and Daniel. (Resp. at 2-10; *see also id.* Ex. B.) Second, the Johnsons assert that James and Daniel were never asked to give statements and were not provided an opportunity to tell their side of the story before they were removed from the ship. (Resp. at 2; *see also id.* Ex. B.) Third, the Johnsons assert that HAL's crew did not obtain statements from witnesses who saw the actual fight. (Resp. at 2.) Finally, the Johnsons contend that HAL placed James and Daniel in danger because shortly after the December 22, 2010 incident, several cruise lines, including HAL, canceled stops in Mazatlan due to incidents of violence against tourists and crew ship passengers. (*See id.* Ex. A (attaching a January 26, 2011 article from "Sign On San Diego," the *San Diego Union-Tribune*'s website).)

On March 11, 2011, the Johnsons filed their complaint in this action. (Dkt. # 1.[2]) The Johnsons allege that James and Daniel were unjustly removed from the ship without a thorough investigation; that ship personnel were negligent in serving alcohol to an underage passenger (presumably Mr. Illner) and in failing to intervene when the passenger's behavior became threatening; and that HAL's crew's conduct ruined the

---

[2] The Johnsons filed their complaint using the Western District of Washington's form complaint for civil pleadings, which contains minimal space for factual allegations. (*See id.*)

Johnsons' Christmas vacation, causing them severe emotional distress. (*Id.* at 2.) The Johnsons seek an award of $5,000.00 to compensate them for the cost of the cruise, for James and Daniel's out-of-pocket expenses, and for their emotional distress. (*Id.* at 3.)

On June 9, 2011, HAL filed the instant motion for summary judgment.

## II. ANALYSIS

### A. Summary Judgment Standard

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits, when viewed in the light most favorable to the non-moving party, "show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007). The moving party bears the initial burden of showing there is no genuine issue of material fact and that he or she is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party meets his or her burden, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Cline v. Indus. Maint. Eng'g. & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000). The non-moving party "must make a showing sufficient to establish a genuine dispute of material fact regarding the existence of the essential elements of his case that he must prove at trial." *Galen*, 477 F.3d at 658. Genuine factual issues are those for which the evidence is such that "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**B.     Breach of Contract Claim**

HAL argues that it is entitled to summary judgment on the Johnsons' claim that HAL breached the Passage Contract by removing James and Daniel from the ship without conducting a reasonable investigation. HAL contends that its Passage Contract is enforceable; that it puts a passenger on notice that HAL may "reasonably determine" that it is appropriate to deny transportation to a passenger in order to ensure the safety of other passengers; and that Captain Baijens's decision to remove James and Daniel from the ship was reasonable and consistent with his authority as master of the vessel. HAL relies on Clause A.6 of the Terms and Conditions of HAL's Passage Contract, which provides:

> **6. Authority to Remove Passengers:** We may reasonably determine that for your safety, the safety of the Ship or other means of transportation or the safety or comfort of other passengers or our employees, you be denied transportation either before or during the Cruise, Cruisetour or HAL Land Trip. By way of example, these would include situations where: (a) you are or become in such condition as to be unfit to travel or dangerous or obnoxious to other passengers or employees; (b) you are inadmissible under the immigration or other laws of any country included in the Cruise, Cruisetour or HAL Land Trip itinerary or fail at any time to possess required travel documents; or (c) you fail to abide by the rules or orders of the Master or other ship's officers. If transportation is denied after departure, you and your baggage may be landed or transported to any port or location that we select, without any resulting liability on our part.

(Kidd Decl. (Dkt. # 7) Ex. 1 ("Passage Contract") Clause A.6.)

The Johnsons do not dispute that the Passage Contract is valid and enforceable. Rather, they contend that Captain Baijens's decision to remove James and Daniel from the ship was not reasonable under Clause A.6 because James and Daniel were never given the opportunity to provide statements before being removed from the ship and

because HAL did not consider the potential danger James and Daniel faced by being forced to disembark in Mazatlan. (Resp. at 9-11.)

The issue in this case is not whether Captain Baijens's decision to remove James and Daniel from the ship was correct, but, rather, whether his decision to remove them was reasonable. Whether a defendant acted reasonably is generally a question for the trier of fact.[3] *Wyler v. Holland Am. Line-United States, Inc.*, 348 F. Supp. 2d 1206, 1209 (W.D. Wash. 2003). Here, based on the parties' conflicting positions on whether James and Daniel were asked to provide statements before Captain Baijens made his decision, the court concludes that there is a genuine dispute of fact regarding whether Captain Baijens "reasonably determine[d]" that it was necessary to remove James and Daniel from the ship in the interest of their safety, "the safety of the Ship . . . or the safety or comfort of other passengers or [HAL] employees." (Passage Contract Clause A.6.) The court therefore denies HAL's motion for summary judgment on the Johnsons' breach of contract claim.

## C. Emotional Distress Claim

HAL contends that it is entitled to summary judgment on the Johnsons' claim for damages for emotional distress because it disclaimed liability for emotional distress damages in the Passage Contract. Clause A.4(a) of the Passage Contract provides:

---

[3] The Passage Contract provides that it is to be construed "in accordance with the general maritime law of the United States and, to the extent such maritime law is not applicable, it shall be construed in accordance with the laws of the State of Washington." (Passage Contract Clause A.4(b).)

> **4. Limitation on Liability; Governing Law; Non-HAL Services:** (a) In the event you are injured, become ill, or die, or your property is lost or damaged, or you and/or your property is delayed, or you sustain any other loss or damage whatsoever, we will not be liable to you unless the occurrence was due to our negligence or willful fault. We disclaim liability to you under any circumstances for infliction of emotional distress, mental suffering or psychological injury which was not: (i) the result of physical injury to you caused by the negligence or fault of a crewmember or the manager, agent, master, owner or operator of the Ship; (ii) the result of you having been at actual risk of physical injury caused by the negligence or fault of a crewmember or the manager, agent, master, owner or operator of the Ship; or (iii) intentionally inflicted by a crewmember or the manager, agent, master, owner or operator of the Ship. In no event will we be liable to you for consequential, incidental, exemplary or punitive damages.

(Passage Contract Clause A.4(a).)

The Johnsons acknowledge that this provision of the Passage Contract is enforceable, but contend that it does not disclaim liability for Tonda Johnson's emotional distress claim because her emotional distress and mental suffering was caused by Captain Baijens's negligence or fault, was "the result of her being at actual risk of physical injury (becoming violently ill)," and was intentionally inflicted by Captain Baijens and other high-ranking crew members. (Resp. at 11-12.) The Johnsons contend that "more facts will be evident" regarding Ms. Johnson's emotional distress claim after they have an opportunity to obtain a statement from Tri Wiyono, Manager of the Vista Dining Room. (*Id.* at 12.)

Mindful of its duty to construe a pro se plaintiff's filings liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the court construes the Johnsons' response as a request

that the court deny the motion under Rule 56(d) of the Federal Rules of Civil Procedure.[4] Rule 56(d) provides that if "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).

HAL has filed its motion for summary judgment very early in this case. Amended pleadings may be filed until November 2011; discovery does not close until January 2010; and trial is set for May 2012. (Dkt. # 13.) Further, it appears that HAL filed the instant motion before the parties had even exchanged initial disclosures. (*See* Joint Status Report (Dkt. # 10) ¶ 5.A (stating, on June 17, 2011, that initial disclosures were currently being prepared).) Because this litigation is in its earliest stages, and because the Johnsons have identified evidence that they represent will support their claim for emotional distress damages, the court denies HAL's motion for summary judgment pursuant to Rule 56(d)(1).

### III. CONCLUSION

For the foregoing reasons, the court DENIES HAL's motion for summary judgment (Dkt. # 6). The denial is without prejudice against HAL filing a subsequent motion for summary judgment after the parties conduct additional discovery in this case.

---

[4] The court notes that the Johnsons cited an out-of-date version of Rule 56 in their response. (*See, e.g.*, Resp. at 10 ("As a matter of law under Fed. R. Civ. 56(f), essential facts are not available to the nonmovant.").) The court directs the Johnsons to review the current version of Rule 56.

Dated this 21st day of July, 2011.

/s/ James L. Robart
JAMES L. ROBART
United States District Judge